IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| RUBIN CRAIN IV #1987012 | § | |
| v. | § | CIVIL ACTION NO. 6:19cv466 |
| R, ANGTON, ET AL. | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

The Plaintiff Rubin Crain IV, an inmate currently confined in the Texas Department of Criminal Justice, Correctional Institutions Division proceeding *pro se*, filed this civil action complaining of alleged violations of his constitutional rights. The lawsuit was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges.

The named defendants are Officer R. Angton, Assistant Warden Penny Kempt, Warden C.E. Monroe, Sgt. Sweat, Practice Manager Pam Pace, Kitchen Captain Taylor, Warden Stevenson, and TDCJ-CID Director Lorie Davis.

**I. Crain's Original Complaint**

In his original complaint, Crain states that Officer Angton would not allow him to go to the medical department and wrote him a disciplinary case for being out of place. While Crain does not give a date for this incident, he attaches a disciplinary case written by Angton charging him with being out of place on December 20, 2018 (docket no. 1-1, p. 2). He contends that Officer Angton was deliberately indifferent to his serious medical needs.

Crain next contends that Warden Kempt "refused plaintiff to go to reclass statutes to explain what really occurred with the seriousness of need to his medical issues which the fabricated incident

that Officer Angton retaliated against plaintiff to cover up his omission and violation of policies, regulations, and medical facility on the unit due to defendant Warden Kempt, forth insinuates [sic] the mental anguish and the involvement of deliberate indifference acts. Actually, to the standard to a Step One/Two grievance(s) answers that a politician used as the wardens and the UTMB (Pam Pace) has done to cover up the true problem of violating policies and regulations, than, depriving the rights to medical treatment and care, and allow the plaintiff Crain to be retaliated against him [sic] by security staffs that official ignored his complaint and know of and disregard an excessive risk to his health and safety, therein, the moving force in causing the harms in which is held liable for policy as supervisor."

Third, Crain states that Sgt. Sweat violated TDCJ policies and regulations by retaliating against him. He further says that Sgt. Sweat refused him medical care on some unknown date.

Fourth, Crain asserts that Practice Manager Pam Pace is the moving force in causing him harm creating mental anguish as a result of malpractice which occurred on June 30, 2017, when Crain had a stroke. He says that a doctor at a hospital in Tyler diagnosed him with an "ischemic midbrain stroke," but Pace has been personally involved in a causal connection to a constitutional violation.  Crain also contends that the policies of UTMB and TDCJ are so deficient that the policies are themselves a repudiation of constitutional rights, but he does not identify the allegedly deficient policies, much less show how such policies are unconstitutional. He also says that he has been deprived of medical care in some unspecified way.

Next, Crain contends that Captain Taylor violated state law requiring TDCJ to serve "good and wholesome food, prepared in sanitary conditions and provided in sufficient quantity and reasonable variety. He says that he suffered food poisoning which apparently triggered his stroke. In addition, the unit was quarantined from August until September of 2019.

Sixth, Crain complains that Warden Stevenson has been violating the Eighth Amendment because Crain's cell has no air conditioning and no ventilation.  He complains that the officers have

air conditioning in their work areas, and the lack of air conditioning and ventilation in the cells violates the Eighth Amendment.

Crain's first attachment is a grievance he filed on January 16, 2019, complaining of a disciplinary case he received from Officer Angton for threatening to inflict harm on an officer. Warden Kempt signed the Step One grievance upholding the disciplinary case.

On January 17, 2019, Crain received notice of a unit classification hearing which placed him in L1-G4 classification. He then filed a grievance complaining that he was wrongly denied the opportunity to participate in the hearing.  The response to the grievance, signed by Warden Meador, stated that according to the classification supervisor, Crain was laid in for classification and given the opportunity to attend. (Docket no. 1-1, pp. 11-13). He filed a Step Two grievance saying that Warden Meador was lying because Officer Smith would not allow him to go to the hearing, and the response stated that Crain presented no evidence or information which was not considered by the investigator at Step One, there was no conclusive evidence of policy violations found, and no further action was warranted.

Crain's next exhibit is a grievance challenging a disciplinary case he received from Sgt. Sweat on February 20, 2019, for being out of place.  Warden Kempt responded to the grievance by upholding the disciplinary case.  He filed a Step Two appeal, and the Step One finding was upheld by M. Blalock.

On March 25, 2019, Crain filed a Step One grievance complaining about the medical treatment he was receiving for his stroke. The grievance was screened (i.e. returned unprocessed) as illegible or incomprehensible and because of excessive or inappropriate attachments. He then submitted another grievance on March 30 concerning his medical care. The response to this grievance, from Practice Manager Pam Pace, stated that Crain had been scheduled provider appointments for January 28, January 30, February 18, and March 13, and he did not show up for any of them. She told him to submit a sick call request and present at his appointments for evaluation. (Docket no. 1-1, pp. 26-30).

In his Step Two appeal of this grievance, Crain contended that TDCJ security staff keeping denying his appointments and that UTMB has had him on the wrong medication for two years. He also said he needed a brace for his right foot. The response to this grievance says that Crain has a medical history of cerebro-vascular disease (CVA), and he was seen by the nursing staff on June 19 for stroke assessment and his complaint about needing new footwear. He did not show up for provider appointments on July 1 and July 4, but had a tele-health visit on July 8 at which he was prescribed aspirin. He then saw the unit doctor on July 17 for a followup on a neurological eye exam, at which he said that he did not want physical therapy. A routine referral to the Brace & Limb Clinic was submitted. He should attend all scheduled medical appointments. (Docket no. 1-1, pp. 32-33).

Crain next attaches a number of sick call requests, to which the response was that sick call would be scheduled. He then has a Step One grievance form talking about not getting proper medical care; this form is not signed or dated and bears no indication that it was ever submitted or processed. (Docket no. 1-1, p. 50).

Following this, Crain attaches another unprocessed Step One grievance form complaining that the ventilation system in his cell does not work. The date he placed on this form is September 22, 2019, which is eight days before he signed the lawsuit on September 30. (Docket no. 1-1, p. 57). Finally, he includes a copy of a "seasonal preparedness directive" dated in March of 2019 setting out procedures to be followed in case of extreme heat, including wellness checks, respite areas, and a series of precautions and actions covering training, inmate transport, outside activity, offender intake, offender housing assignment, offender housing areas, offender fans, and maintenance, and a list of cooling items available for purchase from the commissary. The precautions and actions relating to inmate fans specify that fans cannot be confiscated unless altered or stolen, fans are allowed for all custody levels, indigent offenders will be issued fans on a first come first served basis, and inmates with significant medical needs will receive priority.

In a supplemental complaint, Crain asserts that he recently discovered a book showing a pattern of indifference toward similarly situated persons, showing that prison officials have violated the standards of the American Correctional Association and the National Commission on Correctional Health Care. He contends that Captain Taylor served contaminated food, causing him to suffer a food-borne illness on July 18-30, 2019. As attachments, Crain includes a grievance dated September 12, 2019, in which he complains that he needs a brace and medical footwear. The response to this grievance, signed by Pace, states that he was referred to the Brace & Limb Clinic by the provider on July 17, 2019, and on October 17, he received his medical shoes. On September 26, he was referred to the Brace & Limb Clinic for a right knee and foot brace, and he has an appointment scheduled.

The book to which Crain evidently refers is also attached to his supplemental complaint. It is entitled "Living with Stroke - a Guide for Families," from HealthSouth Press. The copy attached by Crain opens with chapter 13, entitled "Coming Back - Occupational, Speech, and Recreational Therapy." He also includes other medical information about strokes.

## II. Legal Standards and Analysis

The Plaintiff Rubin Crain has filed at least three lawsuits or appeals which have been dismissed as frivolous or for failure to state a claim upon which relief may be granted. *See Crain v. Director, TDCJ, et al.*, civil action no. 6:17cv158 (E.D.Tex., dismissed for failure to state a claim upon which relief may be granted, July 14, 2018); *Crain v. Dallas County Hospital District*, civil action no. 3:15cv2241 (N.D.Tex., dismissed as frivolous October 2, 2015); *Crain v. Menchaca, et al.*, civil action no. 3:12cv4062 (N.D.Tex., dismissed as frivolous and for failure to state a claim February 4, 2015).

28 U.S.C. §1915(g), added by Act of Congress on April 26, 1996 as part of the Prison Litigation Reform Act, provides that:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the ground that it is frivolous, malicious,

or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

Because Crain has three strikes, he cannot proceed under the *in forma pauperis* statute unless he shows that he was in imminent danger of serious physical injury as of the date of the filing of the lawsuit. *See Baños v. O'Guin*, 144 F.3d 883, 885 (5th Cir. 1998). The allegation of imminent danger must relate to the claims forming the basis of the complaint. *Judd v. Federal Election Commission*, 311 F.App'x 730, 2009 U.S. App. LEXIS 3464, 2009 WL 423966 (5th Cir., February 20, 2009).

In order to meet the imminent danger requirement of §1915(g), the threat must be "real and proximate." *Ciarpaglini v. Saini*, 352 F.3d 328, 330 (7th Cir. 2003). Allegations of past harm do not suffice; the harm must be imminent or occurring at the time that the complaint or notice of appeal is filed, and the exception refers to "a genuine emergency" where "time is pressing." *Heimerman v. Litscher*, 337 F.3d 781, 782 (7th Cir. 2003). In passing the statute, Congress intended a safety valve to prevent impending harms, not those which had already occurred. *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 315 (3rd Cir. 2001). In that case, the Third Circuit rejected a claim that allegations of having been sprayed with pepper spray, combined with a claim that prison officials engaged in "continuing harassment, plots to hurt or kill him, and other forms of retaliation," sufficiently alleged imminent danger.

This Court and others have held that the prisoner must allege specific facts showing he is under imminent danger of serious physical injury at the time of the filing of the lawsuit; general allegations not grounded in specific facts indicating serious physical injury is imminent are not sufficient to invoke the exception to §1915(g). *Fuller v. Wilcox*, 288 F.App'x 509, 2008 U.S. App. LEXIS 16581, 2008 WL 2961388 (10th Cir., August 4, 2008), *citing Martin v. Shelton*, 319 F.3d 1048, 1050 (8th Cir. 2003); *Hyder v. Obama*, civil action no. 5:11cv26, 2011 U.S. Dist. LEXIS 31300, 2011 WL 1113496 (E.D.Tex., March 11, 2011, *Report adopted at* 2011 U.S. Dist. LEXIS 31288, 2011 WL 1100126 (E.D.Tex., March 24, 2011); *Valdez v. Bush*, civil action no. 3:08cv1481, 2008 U.S. Dist. LEXIS 118452, 2008 WL 4710808 (S.D.Tex., October 24, 2008); *Ruston v. Dallas*

*County*, civil action no. 3:04cv1691, 2004 U.S. Dist. LEXIS 26391, 2004 WL 2512232 (N.D.Tex., Nov. 5, 2004).

Crain does not allege, much less show, that he is in imminent danger of serious physical injury. Although he complains about his medical care, the exhibits which he attaches show that he is consistently being seen and treated by medical personnel. He offers no specific facts to show he is in imminent danger of serious physical injury with regard to his medical care.

While Crain also complains about the heat and lack of air conditioning in his cell, he likewise offers nothing to suggest that this circumstance placed him in imminent danger of serious physical injury at the time he filed his complaint, particularly in light of the seasonal preparedness directive which he furnishes, setting out measures taken by the prison to alleviate any dangers posed by the heat. The Fifth Circuit has stated that allegations of exposure to extreme heat and harsh living conditions in prison do not satisfy the imminent danger exception where - as here - the prisoner "does not assert, much less establish," that he is under imminent danger of serious physical injury at the time of the filing of the complaint. *McGrew v. Louisiana State Penitentiary Mental Health Department*, 459 F.App'x 370, 2012 U.S. App. LEXIS 1397, 2012 WL 181415 (5th Cir.,January 24, 2012).

In keeping with this holding, the Northern District of Texas has explained as follows:

The courts that have examined "extreme heat" allegations in the context of the imminent danger exception to Section 1915(g) have focused on whether a plaintiff alleges "how the heat conditions pose[ ] an immediate threat to him." *Moten v. Adams*, No. 1:07-cv-924-AWI-MJS (PC), 2012 WL 2529204, at *2 (E.D. Cal. June 29, 2012), *rec. adopted*, 2012 WL 9245876 (E.D. Cal. Aug. 13, 2012) (citing *Andrews v. Cervantes*, 493 F.3d 1047, 1057 n.11 (9th Cir. 2007) ("assertions of imminent danger of less obviously injurious practices may be rejected as overly speculative or fanciful")); *see also Johnson v. Telfair State Prison*, No. CV 313-047, 2013 WL 4084637, at *2 (S.D. Ga. Aug. 13, 2013) ("As to Plaintiff's allegation concerning the lack of air conditioning in his prison cell – the only allegation that might even arguably relate to a finding of imminent danger – Plaintiff simply asserts in a conclusory manner that the deprivation of air conditioning constitutes cruel and unusual punishment under the Eighth Amendment. He does not, however, assert that he is in any real danger as a result of the supposed lack of air conditioning; at most, he appears to imply that he is generally uncomfortable." (citation omitted).

*Fulton v. Harmon*, civil action no. 3:16-CV-2244, 2016 U.S. Dist. LEXIS 111639, 2016 WL 4440495 (N.D.Tex., August 11, 2016), *Report adopted at* 2016 U.S. Dist. LEXIS 111332, 2016 WL 4429453 (N.D. Tex. Aug. 22, 2016).

As in *McGrew* and *Fulton*, Crain does not offer any specific facts showing how the heat posed an imminent danger of serious physical injury. Because past harms are not sufficient, none of his other claims show imminent danger of serious physical injury at the time he filed the lawsuit. Crain's allegations cannot satisfy the imminent danger exception of 28 U.S.C. §1915(g).

Because Crain has not demonstrated an imminent threat of serious physical injury and did not pay the full filing fee, this lawsuit should be dismissed pursuant to 28 U.S.C. §1915(g). However, Crain should be allowed a reasonable period of time in which to pay the filing fee and proceed with his lawsuit should he choose to do so. Furthermore, the dismissal of this lawsuit should not prevent Crain from filing a new lawsuit in the event he can show that conditions currently existing, including but not limited to heat exposure, pose an imminent danger of serious physical injury.

## RECOMMENDATION

It is accordingly recommended that the Plaintiff's application for leave to proceed *in forma pauperis* be denied and the above-styled civil rights lawsuit dismissed with prejudice as to the refiling of another *in forma pauperis* lawsuit raising the same claims as herein presented, but without prejudice to the refiling of this lawsuit without seeking *in forma pauperis* status and upon payment of the full $400.00 filing fee. It is further recommended that should the Plaintiff pay the full filing fee within 15 days after the date of entry of dismissal, he be allowed to proceed in this lawsuit as though the full fee had been paid from the outset.

A copy of these findings, conclusions and recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendations must file specific written objections within 14 days after being served with a copy.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's proposed findings, conclusions, and recommendation where the disputed determination is found.

An objection which merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific, and the district court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Commission*, 834 F.2d 419, 421 (5th Cir. 1987).

Failure to file specific written objections will bar the objecting party from appealing the factual findings and legal conclusions of the Magistrate Judge which are accepted and adopted by the district court except upon grounds of plain error. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

So ORDERED and SIGNED this 15th day of July, 2020.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE